UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                               PLAINTIFF

vs.                                            CRIMINAL ACTION NO. 3:20-CR-86-RGJ
                                                           Electronically Filed

KEITH HUNTER                                                          DEFENDANT

## AMENDED BILL OF PARTICULARS

The United States of America, by counsel, hereby files this amended Bill of Particulars. At trial in the matter, the United States will prove the defendant evaded payment of tax through the following affirmative acts.

**I.      Concealing Assets**

The primary assets the defendant attempted to conceal consist of:

A. Payment for legal services in the amount of approximately $1,288,895.66 received in or around January 2011;

B. Payment for legal services in the amount of approximately $112,236.56 received in or around August 2011;

C. Proceeds from a real estate partnership received between 2013 and 2019, including a check for approximately $60,781.14 received in or around January 2014; a check for approximately $140,000 received in or around January 2017; and other checks from the real estate partnership for smaller amounts;

D. Any other assets that were recycled into cashier's checks, including assets derived from income, gifts, and bonds; and

E. The defendant's residence, located at 1420 South Fourth Street in Louisville,

Kentucky.

The defendant attempted to conceal these assets through the methods described below.

## II.  Storing Personal Income in a Client Escrow Account

In or around January 2011, the defendant, who was a practicing attorney, opened a client escrow account with PNC Bank, with account number ending in 0147.  Prior to opening this account, the defendant had a personal bank account with PNC Bank, with account number ending in 8190.  After opening the client escrow account, the defendant used the client escrow account to hold personal income and to pay for personal expenses.  The defendant deposited $1,100,000 from the $1,288,895.66 payment the defendant received in or around January 2011 into the client escrow account, as well as the entirety of the $140,000 in real estate partnership proceeds the defendant received in or around January 2017 and other smaller checks from the real estate partnership.  Additionally, the escrow account was used to process the $112,236.56 payment in August 2011.

## III.  Storing Personal Income in a Nominee Bank Account

In or around January 2014, at the defendant's request, the defendant's friend and associate, W.G., opened a bank account at River City Bank under W.G.'s business.  The account number ended in 6073.  W.G. designated the account the "Hunter Account."  The defendant endorsed the check for the partnership proceeds of approximately $60,781.14 to W.G., and W.G. deposited the majority of the check into the account.  The account was then used primarily for the benefit of the defendant.

## IV.  Purchasing His Home Through a Nominee

In 2007, Citizens Union Bank started foreclosure proceedings against the defendant related to 1420 South Fourth Street in Louisville, Kentucky ("the residence").  In January 2011, the

defendant attempted to purchase the residence out of foreclosure through a female friend. This attempt was unsuccessful. In or around September 2011, the defendant and Citizens Union Bank agreed to terms for the defendant's right of redemption in the residence for $300,000. In or around October 2011, the defendant transferred his right of redemption in the residence to a non-profit run by W.G. The defendant then made a $300,000 "donation" to W.G.'s non-profit, which the defendant claimed as a charitable contribution deduction on his 2011 tax return. The $300,000 "donation" was then used by W.G. to purchase the residence through the non-profit. In or around October 2011, the defendant moved back into the residence. The defendant continued to live at the residence up until at least October 2020.

      V.      **Recycling Cashier's Checks**

The defendant recycled cashier's checks, i.e., engaged in a cycle of purchasing cashier's checks, using a small portion of the initial cashier's check, then purchasing one or more cashier's checks of lesser value. The transactions at issue involved the use of bonds or cashier's checks purchased payable to the defendant and later exchanged for smaller cashier's checks payable to the defendant. The defendant frequently cycled the cashier's checks through the defendant's PNC client escrow account ending in 0147. The recycling of cashier's checks began in January 2011 and continued through at least 2019.

The United States takes the position it is not necessary to list every cashier's check transaction. The United States has provided copies of cashier's checks that were part of the recycling in discovery and will describe examples below. However, circumstantial evidence indicates that cashier's checks were recycled beyond the ones that the United States has obtained. At trial, the United States will argue that the practice was even more extensive than the numerous examples the United States has provided direct evidence of.

The United States' evidence is not focused on individual cashier's checks, but rather the general practice of placing assets outside of the banking system in the form of cashier's checks and cashing in the cashier's checks for additional cashier's checks. However, by way of example, the defendant purchased cashier's checks and other monetary instruments, i.e., governments bonds, as early as January 2011, when the defendant purchased check #802451 in the amount of $500,000. This check was held, and then ultimately negotiated around January 20, 2012, when the defendant deposited the check, withdrew $492,000, and purchased $490,000 worth of smaller cashier's checks as follows: (1) check #862619 - $100,000; (2) check #862620 - $100,000; (3) check #862621 - $100,000; (4) check #862622 - $100,000; (5) check #862623 - $50,000; and (6) check #862624 - $40,000.

This cycle repeats itself through at least 2019, though the amounts at issue decrease. For example, on January 4, 2019, the defendant cashed in a bond in the amount of $13,416 and used it to purchase check #1698087 in the amount of $10,000, deposit $1,000 in his client escrow account, make a payment of $316, and obtain cash back of $2,100. On January 17, 2019, the defendant cashed in check #1698087 in the amount of $10,000, and used it to purchase check #1705526 in the amount $8,000, deposit $200 into another account, and get cash back of $1,800. On January 30, 2019, the defendant cashed in check #1705526 in the amount $8,000, and used it to purchase check #1705550 in the amount of $6,000 and get cash back of $2,000. On February 13, 2019, the defendant cashed in check #1705550 in the amount of $6,000, and used it to purchase check #1707788 in the amount of $3,000 and get cash back of $3,000.

**VI.    Intentionally Providing False and Misleading Information During Internal Revenue Service Civil Proceeding Regarding Tax Liability**

The defendant has been involved in lengthy civil proceedings with the Internal Revenue

Service regarding his tax liability. The defendant intentionally provided false and misleading information on multiple occasions during these proceedings. On a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, dated October 2, 2013, the defendant stated he does not have a personal bank account, claiming his client escrow account as a business account despite using it predominantly for personal banking purposes. The defendant also failed to list his partnership interest in Hunter Hills, LLC on the October 2, 2013, Form 433-A, though the firm required a listing of "all . . . partnerships . . . in which [he was] an officer, director, owner, member, or otherwise [had] a financial interest." The defendant listed owning approximately $2,600 in camera equipment on the October 2, 2013, Form 433-A, but defendant had spent approximately $70,000 on camera equipment in 2011, and had insured camera equipment valued at $34,175 in 2014. On the October 2, 2013, Form 433-A, the defendant attempted to qualify the perjury certification by writing in, "I reserve the right to supplement my response as info becomes available."

Through the defendant's agent, Mr. Osborne, the defendant responded to Internal Revenue questions via a fax received after hours on December 11, 2013, in response to Form 9297. The request was issued on November 29, 2019. The December 11, 2013, response falsely reported that the defendant's partnership interest in the Hunter Hills project was 0.001%, when in fact the defendant had a 50% interest in the partnership.

Respectfully submitted,

MICHAEL A. BENNETT  
United States Attorney  
*s/Amanda E. Gregory*  
Amanda E. Gregory  
Assistant United States Attorney  
717 West Broadway  
Louisville, Kentucky 40202  
(502) 582-5911  
(502) 582-5097 (FAX)

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 25, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for defendant, Steve Pence.

                                            *s/Amanda E. Gregory*                   .
                                            Amanda E. Gregory