UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.                                    CRIMINAL ACTION NO. 3:20-CR-86-BJB

KEITH HUNTER                                                DEFENDANT

## GOVERNMENT'S PRETRIAL MEMORANDUM
*Electronically Filed*

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this pretrial memorandum in accordance with the previous order of the Court.

**I.  STATUTE INVOLVED AND ELEMENTS OF OFFENSES**

Count One of the Superseding Indictment charges a violation of 26 U.S.C. §7201. To establish a violation of that statute, the Government must prove:

First, that the defendant committed an affirmative act constituting an attempt to evade the payment of a tax;

Second, that the defendant has additional tax due and owing; and

Third, that the defendant acted willfully.

*See* 26 U.S.C. § 7201.

**II.  UNITED STATES' STATEMENT OF FACTS**

Counsel for the United States asked defense counsel whether there were any undisputed facts. Defense counsel did not respond. Counsel for the United States assumes there are no undisputed facts. Below is the United States' version of facts.

The defendant is a licensed attorney who does not pay his taxes. Since the mid-1990's, the defendant has consistently failed to file timely tax returns and failed to pay tax that is due, even when he had the funds available to make the payments. Until 2018, the defendant had outstanding tax balances for tax years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2008, and 2011. In 2018, the balances due for 1996, 1998, 1997, and 1999 were paid off through an interpleader suit, over the defendant's objection. As of the time of the filing of the initial indictment in this case, the defendant owed approximately $1,124,620 to the Internal Revenue Service in overdue income taxes, interest, and penalties.

In 2011, the defendant received approximately $1.4 million in payment for legal services that would have been more than sufficient to pay off all of his outstanding tax debt. Instead of paying off the debt, the defendant began to take steps to hide his assets so they could not be seized by the Internal Revenue Service to pay for his tax deficiency.

The defendant also had a membership interest in Hunter Hills, LLC, a real estate company. The defendant received a number of payouts from Hunter Hills, LLC, between 2013 and 2019.

On January 7, 2011, the defendant opened an "escrow" account at PNC bank. An attorney escrow account is a bank account that is opened and maintained by an attorney, and which is dedicated solely to money received from and intended for clients. The Internal Revenue Service would generally not seize funds in an attorney escrow account to pay off an attorney's tax debt, under the assumption the funds belong to the attorney's clients. After opening the attorney escrow account, the defendant used the account to store his personal assets and pay for his personal expenses. Shortly after opening the account, the defendant deposited $1,100,000 of a $1,288,895.66 payment for legal services into the escrow account. In August 2011, the

defendant processed a $112,236.56 payment for legal services through the escrow account. In January 2017, the defendant deposited $140,000 in profits from Hunter Hills, LLC, in the escrow account. The defendant also deposited other smaller checks from Hunter Hills, LLC, in the escrow account.

The defendant's home, located at 1420 South Fourth Street (the "House") in Louisville, Kentucky, had been in the foreclosure process from 2007 to 2011. In September 2011, the defendant negotiated with the foreclosing bank to have a right of redemption in the House for $300,000. In October 2011, the defendant "transferred" his right of redemption in the House to a non-profit run by his friend, W.G. The defendant then "donated" $300,000 to the non-profit and claimed a $300,000 charitable deduction on his 2011 Form 1040 for this contribution. The non-profit then purchased the House from the bank for $300,000. However, the defendant continued to live in the House for at least the next ten years.

In or around January 2014, at the defendant's request, the defendant's friend and associate, W.G., opened a bank account at River City Bank under W.G.'s business. W.G. designated the account as the defendant's account. The defendant received another $60,781.14 in partnership proceeds from the real estate investment. He endorsed the check for $60,781.14 to W.G., and W.G. deposited the majority of the check into the account. The account was then used primarily for the benefit of the defendant.

From January 2011 until at least 2019, the defendant engaged in a process of operating in cashier's checks known as recycling cashier's checks. The defendant purchased a cashier's check, then later used a small portion of the initial cashier's check, then purchased one or more cashier's checks of lesser value. By keeping assets in cashier's checks, rather than in a bank account, the defendant decreased the risk that the Internal Revenue Service would locate and

seize the funds. The defendant frequently cycled the cashier's checks through the defendant's escrow account.

The defendant has been involved in lengthy civil proceedings with the Internal Revenue Service regarding his tax liability. The defendant intentionally provided false and misleading information on multiple occasions during these proceedings. On a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, dated October 2, 2013, the defendant stated he does not have a personal bank account, claiming his client escrow account as a business account despite using it predominantly for personal banking purposes. The defendant also failed to list his interest in Hunter Hills, LLC on the October 2, 2013, Form 433-A, though the firm required a listing of "all . . .limited liability companies . . . in which [he was] an officer, director, owner, member, or otherwise [had] a financial interest." The defendant listed owning approximately $2,600 in camera equipment on the October 2, 2013, Form 433-A, but defendant had spent approximately $70,000 on camera equipment in 2011, and had insured camera equipment valued at $34,175 in 2014. On the October 2, 2013, Form 433-A, the defendant attempted to qualify the perjury certification by writing in, "I reserve the right to supplement my response as info becomes available."

III. **ANTICIPATED SUBSTANTIVE ISSUES OF LAW**

**A. The United States Is Not Required to Prove the Amount of Tax Due Listed in the Indictment.**

As long as a tax deficiency is proven, it is not necessary for the United States to charge or prove the exact amount of the tax that is due and owing. *United States v. Bencs*, 28 F.3d 555, 563 fn. 9 (6th Cir. 1994); *United States v. Bishop*, 264 F.3d 535, 550-52 (5th Cir. 2001); *United States v. Thompson*, 806 F.2d 1332, 1335-36 (7th Cir. 1986); *United States v. Harrold*, 796 F.2d

1275, 1278 (10th Cir. 1986); *United States v. Citron*, 783 F.2d 307, 314-15 (2d Cir. 1986); *United States v. Buckner*, 610 F.2d 570, 573-74 (9th Cir. 1979); *United States v. Marcus*, 401 F.2d 563, 565 (2d Cir. 1968). Rather, the actual amount of tax that the defendant owes may be more or less than the amount charged in the indictment. *See United States v. Johnson*, 319 U.S. 503, 517-18 (1943); *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000); *United States v. Plitman*, 194 F.3d 59, 65-66 (2d Cir. 1999); *Marcus*, 401 F.2d at 565; *Swallow v. United States*, 307 F.2d 81, 83 (10th Cir. 1962). *See, e.g., United States v. Burdick*, 221 F.2d 932, 933-34 (3d Cir. 1955) (upholding a conviction where the indictment charged $33,000 as unreported taxable income and the proof at trial established only $14,500 as unreported); *United States v. Costello*, 221 F.2d 668, 675, 679 (2d Cir. 1955), aff'd, 350 U.S. 359 (1956) (upholding a conviction where the bill of particulars alleged $244,000 gross income as unreported and about $288,000 was proved at trial).

**B. Whether the United States Is Required to Prove the Amount of Tax Due Is "Substantial."**

The Courts of Appeals have divided over whether the Government must prove a tax deficiency is "substantial" in a tax evasion case. *Boulware v. United States*, 552 U.S. 421, 424 (2008) (*citing United States v. Daniels*, 387 F.3d 636, 640-41 & n.2 (7th Cir. 2004)) (collecting cases). In circuits where the courts have held that the United States is required to prove that the tax deficiency is "substantial," the cases suggest that relatively small sums can be deemed substantial. *See United States v. Gross*, 286 F.2d 59, 60-61 (2d Cir. 1961) (unreported income in the amount of two $2500 payments deemed "substantial"); *United States v. Nunan*, 236 F.2d 576, 585 (2d Cir. 1956) ("[A] few thousand dollars of omissions of taxable income may in a given case warrant criminal prosecution."). The Seventh and Ninth Circuits have held that there

is no substantiality requirement for a Section 7201 violation. *Daniels*, 387 F.3d 636, 639 (7th Cir. 2004); *United States v. Marashi*, 913 F.2d 724, 735 (9th Cir. 1990). The Seventh Circuit stated:

> We take this opportunity to clarify the law in this Circuit: the government need not charge a substantial tax deficiency to indict or convict under 26 U.S.C. § 7201. To hold otherwise would contradict the clear language of the statute and lead to an absurd result. Requiring the government to charge and prove that a defendant's tax deficiency is substantial in order to prosecute her for tax evasion would prevent the prosecution and punishment of those who willfully cheat the government out of small or "insubstantial" amounts of money. A substantiality element would invite taxpayers to cheat on their taxes in small amounts without fear of prosecution. We cannot countenance such a result. Although evidence of a large or substantial tax deficiency may aid the government in proving willfulness, it is not itself an element of the offense.

*Daniels*, 387 F.3d at 641.

Prior to 2008, the Sixth Circuit had used the "substantial" language in some cases. *See Bencs*, 28 F.3d at 563 fn. 9; *United States v. Burkhart*, 501 F.2d 993, 995 (6th Cir.1974). However, in 2008, the Sixth Circuit noted that the "substantiality" requirement in other circuits was generally tied to the United States' use of a "net worth" theory to prove the amount of tax due. *United States v. Heath*, 525 F.3d 451, 456-457 (6th Cir. 2008). In using a "net worth" theory, the government uses circumstantial evidence to prove a taxpayer's liability because there is no reliable direct evidence in the form of the taxpayer's books and records. *Id*. at 457. In *Heath*, the Sixth Circuit held "the district court did not err in refusing to include the term 'substantial' in the jury instructions, even if [the substantial language] is required when the government uses a net worth theory of proof to establish the amount of unpaid income tax." *Id*.

In this case, the United States is not using a "net worth" theory to compute the tax due. Rather, most of the tax liability can be proven through use of returns that the defendant filed himself. The tax deficiency derived from the defendant's filed returns would be more than

sufficient to meet the substantiality requirement. However, under *Heath*, the United States is not required to prove that the tax deficiency is substantial.

## IV.     ANTICIPATED EVIDENTIARY ISSUES

### A.     Certified Tax Records

As is usual in tax cases, the government will offer numerous tax documents into evidence. Among the documents the government intends to introduce are documents from Internal Revenue Service Centers. These documents include certified copies of tax returns; certificates of account transcripts; and other certified records of case files. As certified records, these exhibits could be entered into evidence without a witness. However, a representative from the Internal Revenue Service will likely testify and introduce the records.

### B.     Certified Business Records

The United States will introduce business records pursuant to Federal Rule of Evidence 803(6). These records will include records financial institutions and debt collection agencies. These records are admissible as an exception to the hearsay rule. Fed. R. Evid. 803(6).

A business record must satisfy four requirements in order to be admissible under Rule 803(6): (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to make the record; and (4) the record must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *See United States v. Salgado*, 250 F.3d 438, 451 (6th Cir. 2001) (citations omitted). "The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's record-keeping practices." *Id*.

Under F.R.E. 902(11), the requirements for admission of a business record may be met without the testimony of a custodian or other witness. The United States will use Rule 902(11) certifications in this case.

C.  **Statements Made by Defendant's Agents Within the Scope of that Relationship**

Under Federal Rule of Evidence 801(d)(2)(D), a statement by a party's employee or agent made during the existence of that relationship on a matter within the scope of the relationship is not considered hearsay when used against the party. In order to admit the admission under this exception to the hearsay rule, the United States must establish that "the statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003).

Here, the United States anticipates introducing statements made by the defendant's accountant during the course of representing the defendants in civil tax proceedings. In particular, the United States anticipates introducing both written and oral statements made by the accountant to Internal Revenue Service personnel on behalf of the defendant. The statements of counsel in acting as defendants' agent during civil proceedings are not hearsay under Rule 801(d)(2)(D).

D.  **Scope of Cross-Examination**

The scope of a cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b). Rule 611(b) requires the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time,

and (3) protect witnesses from harassment or undue embarrassment." "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." *Id.* The scope of cross-examination does not extend to matters that are irrelevant, or as to which the relevance is substantially outweighed by unfair prejudice. Fed. R. Evid. 402, 403.

E.  **Improper Use of Interview Summaries and Agent Notes**

Defense counsel should be limited to using interview summaries provided in the form of reports and agent notes consistent with the law and Rules of Evidence. The United States will provide defense counsel with reports of interviews, in the form of summary reports, and potentially agent notes from interviews, in case the agent ends up testifying to subjects covered in the reports or notes. These reports and notes are Jencks material for the agent who wrote them if he testifies about their substance. However, under Sixth Circuit law, these reports and notes do not constitute "statements" of the interviewed witnesses. *See United States v. Dorman*, 108 Fed. App'x 228, 244-45 (6th Cir. 2004); *United States v. Nathan*, 816 F.2d 230, 236-37 (6th Cir. 1987). The interviewed witnesses have not reviewed these reports and notes, checked them for accuracy, or adopted them in any way.

Defense should be precluded from introducing the contents of the interview summaries to impeach witnesses on the basis of inconsistent statements because the interview summaries are statements of government agents summarizing the substance of an interview, not the statements of the witnesses themselves. *Palermo v. United States*, 360 U.S. 350-53 (1959). Moreover, defense must be precluded from publishing the contents of the interview summaries to the jury, or otherwise suggesting to the jury that the interview summary is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense

9

counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the Federal Rules of Evidence).

The defense is free to ask a witness whether he or she made a statement that is reflected in an interview summary. However, if the defense is not satisfied with the witness' answer, the defense may not publish or introduce the contents of the interview summary as a prior inconsistent statement. "[S]uch documents [i.e., interview reports] have been deemed inadmissible for impeaching witnesses on cross-examination because they represent the 'investigator's selections, interpretations, and interpolations." *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005).

### F. Improper Character Evidence

Other than testimony from character witnesses fitting within the narrow confines of Federal Rules of Evidences Rule 404(a)(1) and 405(a), evidence offered by defendant of his lawfulness or good conduct is not admissible.

### G. 404(b) Evidence

The United States hereby provides notice to the defendant that it intends to offer into evidence documents or testimony which may be considered governed by Federal Rule of Evidence 404(b) which provides:

> (b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide

> reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

Specifically, the government may seek to elicit testimony or seek the admission of evidence of the following matters which may constitute evidence admissible under Rule 404(b), Federal Rules of Evidence:

> a) That the defendant's other false statements in IRS civil filings, such as the failure to list 116 Smithfield Street, New Castle, PA, as an asset, and listing his interest in Hunter Hills, LLC, as % 0.001, instead of % 0.01;
>
> b) That the only other property "owned" by Through the Valley Foundation, Inc., was 817 Etna Street, New Castle, PA, which was "donated" by the stepmother of the defendant;
>
> c) That the defendant had unpaid tax deficiencies for 1996, 1997, 1998, and 1999, until 2018, and then they were paid off over the defendant's objection through an interpleader action; and
>
> d) The defendant's general tax return filing history during the charged period.

While noticing this as 404(b) evidence out of an abundance of caution, the government would contend that the above evidence is inextricably intertwined with the offense.

A district court must make three findings before admitting evidence under Rule 404(b). *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2006). It must first find that the prior bad act occurred. *Id*. The government must provide sufficient evidence of the prior bad act so that "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Next, the district court must determine

that the evidence is probative of one of the permissible Rule 404(b) purposes. *Bell*, 516 F.3d at 440. Finally, the district court must determine that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed. R. Evid. 403; Bell, 516 F.3d at 440.

Rule 404(b) prohibits the use of extrinsic evidence of other crimes, wrongs, or acts in order to show that a person acted in conformity therewith. Fed. R. Evid. 404(b); *see also United States v. Barnes*, 49 F.3d 1144, 1147 (6th Cir. 1995). Rule 404(b) does not apply when the other-acts evidence is intrinsic or part of a continuing pattern of illegal activity or where it is "'inextricably intertwined' with evidence of the crime charged in the indictment." *Barnes*, 49 F.3d at 1149. Evidence is inextricably intertwined when the charged conduct and the uncharged conduct are part of the a single criminal episode or when the other acts were necessary preliminaries to the crime charged. *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). When evidence of other crimes, wrongs, or acts is extrinsic to the charged conduct, it is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998).

The government submits that the Rule 404(b) evidence is evidence of willfulness. A defendant's attitude toward the IRS can be probative of willfulness. *Hogan*, 861 F.2d at 316. Because the government has the burden of proving willfulness, such evidence may be introduced before the defendant has asserted a defense. *Id*.

The court may exclude any evidence if its probative value is substantially outweighed by its risk of having an unfairly prejudicial effect. Fed. R. Evid. 403. Evidence is not unfairly prejudicial simply because it provides more support for a conclusion that the defendant

committed the crime; it is unfairly prejudicial if it serves to "inflame the passions of the jury" and causes them to ignore the evidence. *United States v. Whittington*, 455 F.3d 736, 739-40 (6th Cir. 2006). "[U]sually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect." *United States v. Daulton*, 266 Fed. Appx. 381, 385 (6th Cir. 2008) (*citing* Fed. R. Evid. 403 cmt).

V.       **ANTICIPATED TRIAL PROBLEMS**

Many of the exhibits, which include tax records and banks records, contain personally identifying information, personal identifiers, bank information, and other financial information. The parties entered into a Protective Order early in the litigation. DN 18. The order contemplated various avenues for introducing exhibits during hearings or trial, such as redacting, filing under seal, producing summaries, etc. Based on the nature and volume of documents, it is not realistic to redact all private information from all of the documents. The more efficient method is to seal tax records and bank records. Also, the monitors in the courtroom facing the public should not display any of this sensitive information.

The United States does not at this time anticipate any other trial problems.

_____

## VI. CONCLUSION

WHEREFORE, the United States respectfully submits this trial memorandum in compliance with the Court's order. The United States' Proposed Jury Instructions, Proposed Voir Dire, and Exhibit List will be filed separately; while the United States' Witness List will be submitted for the Court's *in camera* review.

Respectfully submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5016 (Tel.)
(502) 582-5067 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel to the defendant.

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant U.S. Attorney