UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                  PLAINTIFF

v.                                                CRIMINAL NO. 3:20-CR-86-BJB

KEITH B. HUNTER                                              DEFENDANT

**SENTENCING MEMORANDUM**

*ELECTRONICALLY FILED*

The United States of America, by counsel, Assistant United States Attorney Amanda Gregory, files its memorandum in support of sentencing in this action currently scheduled for October 18, 2022. The United States does not plan to put on any witnesses at the hearing.

The United States agrees with the guideline calculation in the Presentence Report. The appropriate guideline application for Count 1 of the Indictment is a total offense level of 22. As the defendant has a Criminal History Level of I, this results in a sentencing range of 41 to 51 months. Considering this sentencing range, and the sentencing factors under Title 18, United States Code, Section 3553(a), it is the position of the United States that a sentence of 46 months, at the middle of the sentencing range, is appropriate. The United States would further request any sentence of imprisonment be followed with a three-year term of supervised release, and that payment of restitution to the Internal Revenue Service ("IRS") in the amount of $609,738 be a condition of supervised release.

**I. BACKGROUND AND OFFENSE CONDUCT**

The defendant was a licensed attorney. From the mid-1990's until 2011, the defendant failed to file timely tax returns and failed to pay his tax due, even when he had the funds available

1

to make the payments. Until 2018, the defendant had outstanding tax balances for tax years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2006, 2008, and 2011. In 2018, the balances due for 1996, 1998, 1997, and 1999 were paid off through an interpleader suit, over the defendant's objection.

In 2011, the defendant received approximately $1.4 million in payment for legal services that would have been more than sufficient to pay off all of his outstanding tax debt. Instead of paying off the debt, the defendant began to take steps to hide his assets so they could not be seized by the Internal Revenue Service to pay for his tax deficiency.

The defendant also had a membership interest in Hunter Hills, LLC, a real estate company. The defendant received a number of payouts from Hunter Hills, LLC, between 2013 and 2019, totaling approximately $273,000.

On January 7, 2011, the defendant, who already had a business account at PNC Bank, opened a new account that was labeled, "ATTY AT LAW, ESCROW ACCOUNT." An attorney escrow account is a bank account that is opened and maintained by an attorney, and which is dedicated solely to money received from and intended for clients. The Internal Revenue Service would generally not seize funds in an attorney escrow account to pay off an attorney's tax debt, under the assumption the funds belong to the attorney's clients. After opening the "escrow" account, the defendant used the account to store his personal assets and pay for his personal expenses. Shortly after opening the account, the defendant deposited $1,100,000 of a $1,288,895.66 payment for legal services into the escrow account. In August 2011, the defendant processed a $112,236.56 payment for legal services through the escrow account. In January 2017, the defendant deposited $140,000 in profits from Hunter Hills, LLC, in the escrow account. The defendant also deposited other smaller checks from Hunter Hills, LLC, in the escrow account.

The defendant's home, located at 1420 South Fourth Street (the "House") in Louisville, Kentucky, was in the foreclosure process from 2007 to 2011. In October 2011, the defendant transferred his right to purchase the house to a non-profit run by his friend, W.G. The defendant then "donated" $300,000 to the non-profit and claimed a $300,000 charitable deduction on his 2011 Form 1040 for this contribution. The non-profit then purchased the House from the bank for $300,000. However, the defendant continued to live in the House for at least the next ten years and spent tens of thousands of dollars on repairing the home.

In or around January 2014, at the defendant's request, the defendant's friend and associate, W.G., opened a bank account at River City Bank under W.G.'s business. W.G. designated the account as the defendant's account. The defendant received another $60,781.14 in partnership proceeds from the real estate investment. He endorsed the check for $60,781.14 to W.G., and W.G. deposited the majority of the check into the account. The account was then used primarily for the benefit of the defendant until the $60,781.14 was depleted around September 2014.

From January 2011 until at least 2019, the defendant engaged in a process of operating in cashier's checks known as recycling cashier's checks. The defendant purchased a cashier's check, then later negotiated the cashier's check, cashing out a small portion of the value of the initial cashier's check, then purchasing one or more additional cashier's checks of lesser value. By keeping assets in cashier's checks, rather than in a bank account, the defendant decreased the risk that the IRS would locate and seize the funds. The defendant frequently cycled the cashier's checks through the defendant's escrow account.

The defendant was involved in lengthy civil proceedings with the IRS regarding his tax liability, including multiple audits and collections proceedings. The defendant intentionally provided false and misleading information on multiple occasions during these proceedings. On a

Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, dated October 2, 2013, the defendant stated he did not have a personal bank account, claiming his escrow account as a business account despite using it predominantly for personal banking purposes. The defendant also failed to list his interest in Hunter Hills, LLC on the October 2, 2013, Form 433-A, though the firm required a listing of "all . . .limited liability companies . . . in which [he was] an officer, director, owner, member, or otherwise [had] a financial interest." The defendant listed owning approximately $2,600 in camera equipment on the October 2, 2013, Form 433-A, but defendant had spent approximately $70,000 on camera equipment in 2011, and had insured camera equipment valued at $34,175 in 2014.

## II. GUIDELINES CALCULATION

The Sixth Circuit has noted that, although advisory, the Sentencing Guidelines should still be "'the starting point and the initial benchmark' for choosing a defendant's sentence." *United States v. Bistline*, 665 F.3d 758, 761 (6th Cir. 2012) (*citing Gall v. United States,* 552 U.S. at 49 (2007)). Here, the United States agrees with the guideline calculations in the Presentence Report, which found the defendant's total offense level to be 22.

### A. Base Offense Level

The Presentence Report correctly calculates the base offense level as 20. The base offense level is determined pursuant to Sections 2T1.1 and 2T4.1. Section 2T1.1(c)(3) provides that for a tax evasion case, the tax loss is "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." Application Note 1 makes it clear that in willful evasion of payment cases, the tax loss includes interest and penalties. *See United States v. Lombardo*, 582 Fed. Appx. 601, 618-19 (6th Cir. 2014).

The below chart summarizes the information contained in the account transcripts for tax

years 2000, 2001, 2002, 2006, 2008, and 2011 (Trial Exhibits 6E, 6F, 6G, 6K, 6M, and 6P), including when the amount was written off by civil collections with respect to the indictment.

| Tax Year | Total Tax Assessed by IRS | Total Tax, Penalties, and Interest | When written off? |
|---|---|---|---|
| 2000 | $40,773 | $90,618.19 | Pre-indictment |
| 2001 | $11,630 | $26,417.57 | Pre-indictment |
| 2002 | $14,812 | $39,071.00 | Pre-indictment |
| 2006 | $7,090 | $24,588.44 | Post-indictment |
| 2008 | $15,610 | $29,025.55 | Pre-indictment |
| 2011 | $519,823 | $966,912.25 | Post-indictment |
| Total in Effect Post-Indictment | **$526,913** | **$991,501.69** | |
| Grand Total | **$609,738** | **$1,176,633** | |

Here, the total tax loss, including interest and penalties, is approximately $1,176,633, which is greater than $550,000 and less than $1,500,000. As such, the base offense level is 20, pursuant to Section 2T4.1(H).

The defendant argues that tax loss that had been written off for civil collections purposes prior to the indictment should not be included in calculating tax loss. In essence, the defendant is arguing that insofar as he was successful in evading his civil tax liability for so long that the obligation became uncollectible, he should be rewarded for the success of his evasive scheme. This is contrary to common sense and the instructions provided by the guidelines. The guidelines provide the amount of the loss should be "the object of the offense," which is contemplated as the loss that would result if the offense was successfully completed. The guidelines make no reference to the civil collections deadline. Finding the civil collections deadline to be a cutoff on the inclusion in tax loss would be the equivalent of finding embezzled funds in an embezzlement case cannot be included in total loss because the civil statute of limitations has run and the victim can no longer bring a civil action to recover the loss. Further, courts have consistently found that

statute of limitations periods do not restrict the relevant conduct for guideline purposes. *See United States v. Dyer*, 908 F.3d 995, 1005 (6th Cir. 2018) ("[I]t is a settled point of law in this circuit that the district court could consider the full amount of loss as relevant conduct for sentencing purposes, regardless of the statute of limitation.") (*citing United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994)).

Moreover, even if the Court accepted the defendant's argument and limited the "total loss" to the amount that was still collectible through the civil collection process at the time of indictment, the base offense would not change. If the liabilities that had been written off prior to indictment were excluded, the loss would be approximately $991,501.69, which is greater than $550,000 and less than $1,500,000. This would still result in a base offense level of 20.

**B.     Sophisticated Means**

A two-level increase should apply under Section 2T1.1(b)(2) as the defendant used sophisticated means in his efforts to avoid paying taxes. Application Note 5 for Section 2T1.1 states that the "sophisticated means" enhancement should apply to "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." Here, the Presentence Report applies the enhancement due to the defendant's use of a bank account in the name of a nominee, the defendant's purchase of his home through a nominee, and the defendant's practice of recycling cashier's checks. The United States takes the position the defendant's use of an account labeled as an attorney escrow account to store personal assets would also qualify as sophisticated means.

The defendant has objected to the application of the sophisticated means enhancement. The defendant argues that the recycling of cashier's checks is not sophisticated means. The defendant further argues that offense conduct that was completed prior to the statute of limitations

6

period, such as the purchase of the house through the nominee and the use of a bank account in the name of W.G. should not be used as the basis for an enhancement.

The statute of limitations is a procedural rule requiring that actions be brought within a certain time period.  It does not create a bar to relevant evidence at trial and it does not prevent the court from considering relevant conduct outside the statute of limitations period.  *See Pierce*, 17 F.3d at 146; *Dyer*, 908 F.3d at 1005.

Further, even standing alone, the defendant's practice of recycling cashier's checks would be sufficient to support the sophisticated means enhancement.  The Fifth Circuit upheld a sophisticated means enhancement when a tax evasion defendant recycled cashier's checks.  *See United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996).  Similarly, the Sixth Circuit has upheld a sophisticated means enhancement for a defendant who deposited checks in a warehouse bank.  *See United States v. Clear*, 112 Fed. Appx. 429, 431 (6th Cir. 2004).

### C.  Offense Level

Recognizing that the Sentencing Guidelines are the starting point for determining an appropriate sentence, and using the above-cited provisions, the United States has calculated the appropriate Guidelines offense level of 22.

### III.  CRIMINAL HISTORY

The United States concurs with the Criminal History Category calculation in the Presentence Report.  The defendant has no criminal history points and is in Criminal History Category I.

### IV.  18 U.S.C. § 3553(a) FACTORS

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).  Title 18, United States

Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed;
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
>> . . .
>
> (5) any pertinent policy statement--
>> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The defendant has been convicted of evasion of payment of tax. The sentence imposed in this action should adequately reflect the seriousness of the offense, provide adequate deterrence, and provide a just punishment no greater than necessary. Based on these factors, as outlined below, the United States recommends a sentence of 46 months, at the middle of the sentencing guideline range.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant

Failure to pay income tax is a serious crime that undermines the basis of our social contract. In this particular case, the defendant's efforts to conceal his assets required the government to

8

expend excessive resources to assess and collect taxes from the defendant. The defendant involved others in his wrongful conduct by using them as nominees to set up new accounts and to hold assets, including a car and a house.

The defendant does not have any criminal history. However, his efforts to thwart IRS collection efforts are not a one-off event or a one-time lapse in judgment. The defendant's efforts are a long-standing pattern of conduct spanning many years. Further, the defendant was an attorney, who should have been upholding the law. Instead, he used his skills and legal knowledge to game the system.

### B. The need for the sentence imposed to reflect the seriousness of the offense and to provide just punishment for the offense

As stated above, failure to pay taxes is a serious crime. The defendant, like all other citizens, receives benefits that come from the government that only exist because of tax revenue. The defendant's case would have remained a civil proceeding if he had simply cooperated during the collection proceeding instead of engaging in behavior to further evade payment. Because he did not, and because his conduct spanned such a long period of time, he is before the Court now.

### C. The need for the sentence imposed to provide adequate deterrence to criminal conduct

The United States has a tax system that relies on voluntary compliance. The vast majority of people comply, but failure to pay taxes and other forms of tax evasion are not unusual. Many instances of this conduct go undetected or are dealt with through civil proceedings with the IRS. For the voluntary system to work, it is important that willful evasion of payment be punished sufficiently to serve as a deterrence.

## V. CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court apply the Sentencing Guidelines, as outlined above, follow the statutory directives set out in 18 U.S.C. § 3553(a), and impose a sentence of 46 months, which is the middle of the sentencing guideline range. The United States would further request any sentence of imprisonment be followed with a three-year term of supervised release, and that payment of restitution to the IRS in the amount of $609,738 ($40,773 for tax year 2000, $11,630 for tax year 2001, $14,812 for tax year 2002, $7,090 for tax year 2006, $15,610 for tax year 2008, and $519,823 for tax year 2011) be a condition of supervised release.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

/s/ Amanda E. Gregory
Amanda E. Gregory
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky 40202
PH: (502) 582-5016
FAX: (502) 582-5097

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

s/ *Amanda E. Gregory*
Amanda E. Gregory
Assistant U.S. Attorney