UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.  No. 3:20-cr-86-BJB

KEITH B. HUNTER

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

A federal grand jury indicted Keith Hunter on one count of evasion of payment of tax in violation of 26 U.S.C. § 7201. Superseding Indictment (DN 27). That indictment charged Hunter with willfully evading payment of his tax liabilities for tax years 2000, 2001, 2002, 2006, 2008, and 2011. It alleged that he took five distinct affirmative acts to evade payment. *Id.* at 1–2. Following a five-day trial, a jury convicted Hunter of the single count of tax evasion.

Hunter then moved to set aside the jury's verdict and for a judgment of acquittal. DN 80 (Motion).[1] He offers three reasons: (1) insufficient evidence to support the affirmative act of using a "client escrow account," (2) the admission and discussion of evidence regarding affirmative acts of evasion that occurred outside the statute of limitations, and (3) a failure to specify, in the jury instructions, the difference between "affirmative acts" and other crimes, wrongs, or acts under Federal Rule of Evidence 404(b)(2) (or exclude that evidence entirely under Rule 403). *Id.* at 1–3.

The latter two issues do not address the sufficiency of the evidence, but rather revisit evidentiary and jury-instruction rulings made during trial. Yet Hunter's motion cited only Federal Rule of Criminal Procedure 29 and requested only a judgment of acquittal. It did not cite Rule 33 or request a new trial, as would typically occur if a defendant contended a "substantial legal error" required a new trial in the "interest of justice." *See, e.g.*, *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). Nor did the motion argue that the jury's verdict ran "against the manifest weight of the evidence," another potential ground for a new trial that may be raised

---

[1] Federal Rule of Criminal Procedure 29(c)(1) ordinarily requires a defendant to move for a judgment of acquittal "within 14 days after a guilty verdict." But Hunter requested and received a two-week extension immediately after the Court published the jury's verdict. So Hunter's motion is timely because the Court orally extended the deadline before it expired. *See Carlisle v. United States*, 517 U.S. 416, 420–21 (1996) (motion for judgment of acquittal, following guilty verdict, may be filed "within an extended period fixed by the court" before the end of Rule 29's normal filing period).

1

under Rule 33. *See, e.g., United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018) (distinguishing sufficiency-of-the-evidence motions under Rule 29).

Nor, for that matter, did Hunter's motion cite any caselaw *at all*. It ran only three pages and cited no precedent justifying acquittal or retrial. The government timely responded—addressing the standard for both acquittal and a new trial. Then Hunter filed a much longer, albeit untimely, reply—without any basis to excuse the delay. The government, however, did not oppose the late filing—perhaps because large portions of the brief merely reargue the inferences that can and should be drawn from the evidence. *See* Reply (DN 95-1) at 1–4, 6–10. This is, of course, a task for the jury rather than judge, *see United States v. Wagner*, 382 F.3d 598, 610–11 (6th Cir. 2004), at least absent a manifest-weight motion under Rule 33, *see Mallory*, 902 F.3d at 596–97. The reply also raised, for the first time, a challenge to the sufficiency of the evidence regarding willfulness, Reply at 12–16, but didn't respond to the government regarding the admission of evidence of evasive acts before the end of the limitations period.

As explained below, Hunter's motion for a judgment of acquittal based on the sufficiency of the evidence of an affirmative act and (to the extent not forfeited) willfulness fails. The government offered ample evidence of both, as well as evidence supporting an alternative ground for the conviction. And even liberally construing Hunter's motion to seek a new trial based on the Court's evidentiary and jury-instruction rulings, those arguments fail as well—largely for the reasons already explained before and during trial.

## I. Sufficiency of the Evidence

Federal Rule of Criminal Procedure 29 requires the Court to "set aside the verdict and enter an acquittal" if the evidence cannot support the jury's guilty verdict. FED. R. CRIM. P. 29(c)(2). That turns on "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The Court lacks authority to "weigh the evidence, evaluate witness credibility, or displace the jury's judgment" with its own. *Wagner*, 382 F.3d at 610–11. "Even the trial court, which has heard the testimony of witnesses firsthand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal." *Burks v. United States*, 437 U.S. 1, 16 (1978). "A defendant making" a motion to set aside a jury verdict, therefore, "bears a very heavy burden." *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004).

To convict Hunter, the government had to prove, beyond a reasonable doubt, the elements of (1) "willfulness," (2) "the existence of a tax deficiency," and (3) "an

affirmative act constituting evasion or attempted evasion of the tax." *United States v. Heath*, 525 F.3d 451, 456 (6th Cir. 2008) (quoting *United States v. DeNiro*, 392 F.2d 753, 758 (6th Cir. 1968)). Hunter's initial argument addressed the third element alone. Motion at 2.

All parties agree that the government presented evidence of only two affirmative acts that allegedly occurred within the six-year limitations cutoff. *Id*. at 1. The instructions made clear that the jury had to find Hunter committed one or both of those acts—recycling cashier's checks or storing personal income in a client escrow account.[2] According to Hunter, the government presented "no evidence" that Hunter's "law firm escrow account" (as described during trial) was actually a "*client escrow account*" (as charged in the indictment). Motion at 2. Because no client funds were placed "in the escrow account in question," Hunter contends this "was not a client escrow account." *Id*. So acquittal would follow because "the jury could have, and possibly did, convict Hunter based on this nonexistent affirmative act." *Id*.

This argument fails for several reasons.

*First*, Hunter's persnickety characterization of the escrow account doesn't control or even compute. The evidence at trial made quite clear which bank accounts the government alleged Hunter used to masquerade his own funds and client funds. Elizabeth Ridenour, a former PNC Bank employee, testified that Hunter's account was "labeled as an *escrow account*." Ridenour Testimony Tr. (DN 82) at 11:6–8 (emphasis added). Christopher Giesin, one of the revenue officers who investigated Hunter's tax liability, testified that the IRS cannot levy on amounts in an escrow account because the IRS treats those assets as belonging to the clients instead of the attorney:

> [I]t's not the attorney's money, it's his clients' money, and so it's held in trust [such that] the banks will not apply our levies to those funds, and, in the same regard, the Internal Revenue Service … because it's not the taxpayer's money … won't allow us to go after that money as well.

Giesin Testimony Tr. (DN 83) at 29:13–30:7; *see also id.* at 98:10–16 (describing the IRS's treatment of a lawyer as the manager, rather than the owner, of the funds in an escrow account). Labeling the account in a way that could shield a taxpayer's funds from IRS seizure is the conduct the government charged and that its evidence

---

[2] This instruction, hammered out after considerable discussion with counsel, made clear that "[a]lthough the government alleges the Defendant committed five types of affirmative acts of evasion listed above, [the government] alleges that only two occurred on or after September 16, 2014: (1) storing personal assets in a client escrow account and (2) recycling cashier's checks and bonds. To find the Defendant guilty, you must agree that he committed either or both of these acts on or after September 16, 2014." Jury Instructions (DN 75) at 6.

3

supported. *See* Response (DN 86) at 2–3 ("The Internal Revenue Service would generally not seize funds in an attorney escrow account to pay off an attorney's tax debt, under the assumption the funds belong to the attorney's clients."). Hunter identified no reason why a particular type of escrow account, as a matter of law, couldn't be used to evade the payment of taxes. And none is apparent. *Cf. Kawashima v. Holder*, 565 U.S. 478, 488 (2012) ("§ 7201 can be violated by a taxpayer who files a truthful tax return, but who also takes affirmative steps to evade payment by moving his assets beyond the reach of the Internal Revenue Service.").

And evidence that Hunter used the escrow account to store his personal assets and income was substantial. Ridenour testified that "a lot of cashier's checks [were] purchased and recycled" through Hunter's "escrow account." Ridenour Tr. at 11:11–13. Many "[w]ires … were … personal." *Id.* at 7:6–12. And Giesin testified to "[l]ots of personal transactions" in the "escrow account" history: "construction payments for the home, travel, going out to eat, a purchase of suits." Giesin Tr. at 98:18–22; *see also id.* at 99–105; 107–110 (listing specific transactions).

To be sure, Hunter took the stand and contended that no client money entered the "Keith B. Hunter, PSC escrow account." Hunter Testimony Tr. (DN 84) at 38:3–9; *see also* Response at 9–13 (citing Trial Ex. 19H and describing personal deposits and expenditures).[3] That account, he contended, "is not a client account. It's … an account for lawyers to use." Hunter Tr. at 38:6–7. And he said he couldn't recall "ever represent[ing] to anyone that it was a client account." *Id.* at 39:19–21. (Aside from those who may have noted the "PSC"—personal service corporation—label in the account's name, presumably.) Viewed in the light most favorable to the government, this description accords with the indictment's allegation that Hunter "stor[ed] personal income in a client escrow account" to hide it from the IRS. Superseding Indictment at 1. Hunter even acknowledged that he "might use it for paying a bill or something like that," Hunter Tr. at 38:3–9, and that he "chose the label escrow account for [his] account." *Id.* at 83:16–18. "The fact that the jury did not draw the desired inference from [the defendant]'s account of the evidence does not render his conviction invalid for want of sufficient evidence." *See United States v. Threadgill*, 572 F. App'x 372, 381 (6th Cir. 2014).[4]

---

[3] Hunter repeatedly describes his client escrow account as closed sometime before 2014. But that conflates one escrow account (ending in -8190) with the one the government showed was used after 2014 (-0147). *See* Response at 10 (identifying -0147 account); *id.* at 12–14 (citing bank records and trial testimony).

[4] Hunter's reply focuses extensively on the nature of so-called "IOLTA" accounts that many members of the Kentucky Bar must use in a manner that bears interest. Reply at 6–8. But the government's evidence did not turn on the existence or use of an IOLTA account, or whether Hunter had to use one or not. Given that Hunter maintains he used his attorney escrow account for personal rather than client funds, this distinction appears utterly immaterial to whether his escrow account (however labeled or regulated) was used to shield

4

*Second*, the essence of Hunter's argument isn't even that the government introduced insufficient evidence; it's that the government relied on evidence of a type of account that Hunter says differs from that identified in the superseding indictment—an attorney rather than a client escrow account. Although Hunter never invoked this concept, his argument really alleges a variance or constructive amendment. In other words, the wrong evidence—not no evidence. "A *variance* [as opposed to a constructive amendment] occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (quotation omitted). But variance concerns go to the notice purposes served by the indictment, rather than to proof. *United States v. Matthews*, 31 F.4th 436, 455 (6th Cir. 2022) (prejudice depends on knowledge of the government's factual theory and ability to adequately prepare defense).

Hunter's reply (at 5) acknowledges this. The Court is hard pressed to see any daylight between the an attorney escrow account and client escrow account. Who other than a client would a law firm or attorney hold money in escrow for? Hunter has identified no real-world, as opposed to semantic, difference in his discussion of the evidence. To the extent any gap exists between the proof and the indictment, moreover, it is far narrower than distinctions in convictions the Sixth Circuit has affirmed. *See, e.g.*, *United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (difference between shotgun and handgun was a mere variance that didn't affect essential element of offense or defendant's substantial rights.). Certainly "the allegation and proof substantially correspond[ed]" here. *United States v. Brownlee*, 716 F. App'x 472, 475 (6th Cir. 2017) (no constructive amendment based on difference between "heroin and fentanyl," on the one hand, and "controlled substances" on the other). And even assuming materiality, Hunter hasn't shown any prejudice. Hunter readily conceded he knew exactly the nature of the evidence heading into trial. *See* Rule 29 Hearing (DN 103) (defense knew accounts at issue based on notice in discovery).[5]

*Third*, Hunter can't complain that the "instructions did not require the jury to identify which of the two affirmative acts it had unanimously agreed upon." Motion

---

money from the IRS in a tax-evasion scheme.

[5] Hunter's only support for a finding of materiality is a jury note that asked about the difference between an "escrow account" and a "client escrow account." Motion at 1–2. The Court responded with, and the defense agreed to, the following response: "I cannot define that wording for you. The words client escrow account come from the indictment. Whether the evidence shows the defendant committed one of the alleged affirmative acts is a factual question for the jury to decide." Trial Tr., Volume 5 (DN 90) at 109–110:25–4; *see also id.* at 110:9 ("I'm okay with that language, Judge") (counsel for Hunter). And the jury returned a guilty verdict soon thereafter. *Id.* at 112:13–17. Despite being pressed for any legal argument or authority that might demonstrate that the existence of a jury question establishes prejudice or materiality, Hunter has identified none.

at 1. As counsel admitted, Hunter didn't request a special-verdict question on this point. Rule 29 Hearing. Nor was one required under these circumstances. *See United States v. Ledbetter*, 929 F.3d 338, 365 (6th Cir. 2019) ("[A] special verdict is required when a finding of one alternative element over another is used to enhance a sentence beyond what would otherwise be the statutory maximum."). And the instructions made crystal clear that the jury had to agree unanimously on the affirmative act at issue to convict. *See* Jury Instructions at 5 ("You must unanimously agree on which act was or acts were committed.") and 6 ("To find the Defendant guilty, you must agree that he committed either or both of these acts on or after September 16, 2014"). Hunter didn't object on the ground that this instruction should've asked the jury to specify the affirmative act(s) they found Hunter committed within the limitations period. *See* Defendant's Proposed Jury Instruction (DN 63).

*Fourth*, Hunter's motion entirely ignores the alternative basis for the verdict: the second charged affirmative act of recycling cashier's checks and bonds. Superseding Indictment at 1. The government introduced evidence that Hunter "used funds from [a] $140,000 distribution from Hunter Hills LLC to purchase one cashier's check for $30,000 and one cashier's check for $100,000." Response at 3–4 (citing Trial Ex. 19J at 2-6). Evidence also showed that Hunter "used the $30,000 cashier's check to purchase a $24,000 cashier's check," *id.* at 4 (citing Trial Ex. 19J at 7–11), and "used the $100,000 cashier's check to purchase a $50,000 cashier's check and a $42,500 cashier's check" *id.* (citing Trial Ex. 19J at 12–17). By "keeping assets in cashier's checks, rather than in a bank account," the government contended, Hunter "made it more difficult for the Internal Revenue Service to locate and seize the funds." Response at 3. So the jury had ample reason and evidence to conclude that this affirmative act supported Hunter's conviction for tax evasion.

Even accepting Hunter's characterization of the escrow account, therefore, an alternative factual basis would support the jury's conviction. *See United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995). Hunter's motion (like his reply) fails to dispute the sufficiency of that evidence—or even mention the issue. To conclude "that the jury actually convicted on the basis of [a factual theory] even though insufficient evidence supported that theory" would require "assum[ing] that the jury ignored the jury instructions." *Id.* at 785. Courts generally must "assume that jurors are able to discard factually inadequate theories of conviction." *United States v. Snyder*, 789 F. App'x 501, 513 (6th Cir. 2019) (quotation omitted).

\* \* \*

Hunter's late-filed reply brief contends (at 12–16), for the first time, that the government's evidence regarding willfulness also fell short. Hunter forfeited this contention by not addressing it in his motion. In any event, the government amply explained why evidence of intent supported the jury's conclusion. Response at 12–14 (cataloging evidence). The reply does little more than reargue the persuasiveness and credibility of this evidence and testimony—a task plainly unsuited for a Rule 29

6

motion. *See, e.g.*, *Wagner*, 382 F.3d at 610–11 (courts confronting Rule 29 motion "do not weigh the evidence, evaluate witness credibility, or displace the jury's judgment with [the court's] own."). The jury has already rejected these arguments and the Court lacks any basis to revisit them.

## II. Acts Outside the Limitations Period

Hunter next argues that he is entitled to a judgment of acquittal because the Court admitted evidence regarding affirmative acts of evasion that occurred outside the statute of limitations. Motion at 2–3. As described above, Hunter never explained why this evidentiary ruling, even if erroneous, would support a Court-ordered judgment of acquittal under Rule 29. So Hunter's motion cannot succeed on this basis.

Even if the Court were to liberally construe this as a request for a new trial under Rule 33, the argument would still fail.

Hunter has not shown that a "substantial legal error" occurred that in the "interest of justice" mandates a new trial. *See Munoz*, 605 F.3d 359 at 373. This argument superficially revisits pre-trial motions and mid-trial objections Hunter made and this Court denied. *See* Motion to Exclude Evidence outside the Statute of Limitations Period (DN 57); Motion to Exclude 404(b) Evidence (DN 64). These latest arguments—however styled—fail for largely the same reasons as the earlier arguments. *See* DN 66 (bench ruling rejecting Hunter's arguments). Nor has Hunter shown any prejudice in light of the Court's instructions to the jury regarding the proof of evasive acts, only some of which they could consider to satisfy the affirmative-act element of the offense.

The statute of limitations for this crime is six years. 26 U.S.C. § 6531(2). But "the date of the latest affirmative act of evasion … triggers the statute of limitations." *United States v. Dandy*, 998 F.2d 1344, 1355 (6th Cir. 1993); *see also Threadgill*, 572 F. App'x at 380. Hunter asserts that the Court should have excluded affirmative acts outside the limitations period and that the jury instructions failed to clarify the difference between an "affirmative act" and evidence of "other acts" under Rule 404(b).

Even affirmative acts outside the limitations period could be relevant and admissible to prove willfulness, particularly because the government's theory of the case was that the affirmative acts were all part of "a consistent, long-term pattern of conduct." *United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987), *abrogated on other grounds by Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597–98 (1993). Hunter has cited no precedent indicating that a court must or should exclude evidence of affirmative acts beyond the statutory period, so long as the jury finds an affirmative act within the statutory period. As stated above, the jury instructions ensured just that:

> Although the government alleges the Defendant committed five types of affirmative acts of evasion listed above, it alleges that only two occurred on or after September 16, 2014: (1) storing personal assets in a client escrow account and (2) recycling cashier's checks and bonds. To find the Defendant guilty, you must agree that he committed either or both of these acts on or after September 16, 2014.

Jury Instructions (DN 75) at 6; *see also United States v. Pieron*, No. 21-2899, 2022 WL 3867562, at *2 (6th Cir. Aug. 30, 2022) (instruction requiring affirmative act of tax evasion after January 9, 2012 correctly stated the law).

Courts presume that juries follow instructions "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions … and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *United States v. Ford*, 872 F.2d 1231, 1239 (6th Cir. 1989) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)). Hunter's motion presumes the opposite—that the jury must've misunderstood or ignored the statute-of-limitations instruction, which the Court and counsel alike discussed at the close of trial. *See* Motion at 2–3; Response at 19. Nor does Hunter's reply mention the issue. *See* Reply at 6–11 (discussing only the escrow account in connection with affirmative-act argument).

### III.  Rule 404(b) Evidence

Hunter finally objects that the jury instructions didn't distinguish between "affirmative acts" outside the statute of limitations and "other acts" under Rule 404(b)(2). Motion at 3. He worries this may have confused the jury. *Id.* This contention fails for the same reasons discussed above: this is not a valid argument for a judgment of acquittal under Rule 29, and Hunter hasn't shown any error or "strong likelihood that the effect of the evidence would be devastating" to him. *Ford*, 872 F.2d at 1239 (quotation omitted).

Hunter also asserts that the Court should have excluded any 404(b) evidence as unduly prejudicial or confusing under Rule 403. Motion at 3. But as the government notes in its response (at 14), Hunter doesn't identify any particular evidence regarding particular "acts outside the statute of limitation and not otherwise admissible to prove the offense of tax-evasion." Motion at 3.[6] The Court rejected Hunter's pretrial argument to exclude pre-2014 evidence on the ground that it was admissible to prove intent under Rule 404(b) so long as the government didn't present

---

[6] Hunter previously moved to exclude Rule 404(b) evidence on the grounds that "Hunter's character is not an issue in this case, and the introduction of such evidence will be more prejudicial than probative of any matter that is an issue." Motion to Exclude (DN 64) at 1. That motion similarly failed to identify any particular evidence that Hunter found particularly objectionable or prejudicial.

8

it in a confusing or prejudicial manner. *See United States v. Grumka*, 728 F.2d 794, 797 (6th Cir. 1984) ("A defendant's prior taxpaying history is competent evidence to establish 'willfulness.'"); *U.S. v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) ("[W]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise."). Because the Rule 404(b) evidence "tend[ed] to demonstrate that [Hunter] knew what [he] was doing and knew that [he] had an obligation to pay taxes," its use by the government was permissible. *United States v. Grosshans*, 821 F.2d 1247, 1253 (6th Cir. 1987). So the Court denied Hunter's motion without prejudice to him re-raising a more specific objection to specific evidence at trial. *See* DN 66.

Regardless, even if not admissible under Rule 404, evidence pre-dating the limitations period would remain admissible as intrinsic or "res gestae" evidence. Only "other crimes or wrongs occur[ing] at different times and under different circumstances from the offense charged" even implicate Rule 404(b). *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Intrinsic acts, by contrast, "are part of a single criminal episode" and don't trigger Rule 404. *Id.*

The four categories of 404(b) evidence identified by the government represent intrinsic acts, particularly given the evidence presented at trial linking them to an ongoing course of evasive conduct by Hunter. *See* USA Pretrial Brief (DN 38) at 11.[7] These acts accord with a "continuing pattern of illegal activity," *Barnes*, 49 F.3d at 1149.

Last, Hunter argues that the Rule 404(b) evidence should have been excluded under Rule 403's balancing test, which excludes even relevant evidence "if its probative value is substantially outweighed by the danger of … unfair prejudice." FED. R. EVID. 403. But his motion and reply cite no prejudice and demonstrate no error. Willfulness was an essential element of the offense, the government (contrary to Hunter's argument) offered this evidence to prove intent, and the Court instructed the jury that it couldn't use the evidence to find an affirmative act within the limitations period.

## ORDER

The Court grants Hunter's unopposed motion for leave to file a reply (DN 95) and denies Hunter's motion to set aside the verdict (DN 80).

October 20, 2022

Benjamin Beaton, District Judge
United States District Court

---

[7] This pretrial brief also satisfied the notice requirements to use such evidence under Rule 404(b)(3).

9