UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**UNITED STATES OF AMERICA**                                                                                       **PLAINTIFF**

v.                                                                                                                          No. 3:20-cr-86-BJB

**KEITH B. HUNTER**                                                                                                      **DEFENDANT**

### MEMORANDUM OPINION & ORDER DENYING MOTION FOR A NEW TRIAL

Keith Hunter is a lawyer who owed the IRS a considerable amount in back taxes, came into a good deal of money, and decided to use the money on (among other things) a house and travel rather than paying his debts. The United States charged him with evading his tax obligations through multiple financial maneuvers, including "storing personal income in a client escrow account," "recycling cashier's checks," and "purchasing his home through a nominee, ostensibly as part of a charitable donation." Superseding Indictment (DN 27) at 1. After a five-day trial, a jury convicted Hunter. *See* Jury Verdict (DN 77). Hunter immediately sought to set aside the verdict. *See* Motion to Set Aside Verdict (DN 80). Relevant here, Hunter argued that the Government hadn't shown that bank account he used to conceal his money was a "*client* escrow account." *Id.* at 2. The account, he contended, was instead a "law firm escrow account"—meaning the evidence varied from the indictment and couldn't support a conviction. *Id.* at 1–2 (drawing on, but not citing, the rule against impermissible variance set forth in, *e.g.*, *United States v. Matthews*, 31 F.4th 436, 455 (6th Cir. 2022)). He'd made the same semantic distinction during trial. *See* Opinion & Order Denying Motion to Set Aside Verdict (DN 104) at 4 (detailing Hunter's trial testimony). The Court rejected this "persnickety" argument on several independent bases. *See id.* at 3–6.

Hunter appealed his conviction. Notice of Appeal (DN 111). While the appeal was pending, he filed this motion for a new trial and the government responded. DNs 157, 158. The Court deferred considering the motion until Hunter's appeal concluded but directed him to file his reply no later than 14 days after the Sixth Circuit issued its mandate. DN 159. A month later, the Sixth Circuit affirmed Hunter's conviction, rejecting the same escrow-account arguments he'd raised in this Court. *See United States v. Hunter*, No. 22-5992 (slip op.) (DN 160) at 3–6. After the Sixth Circuit issued its mandate, nearly a month passed without Hunter having filed his reply. DN 167 (mandate dated 6/26/2024). So the Court denied his original motion without prejudice and gave him another month to renew his motion and explain his delay. *See* DN 168

1

(ordering reply). Hunter eventually filed his reply (DN 169), which the Court construes as renewing his motion for a new trial.[†]

Under Rule 33, a criminal defendant may seek a new trial based on newly discovered evidence. FED. R. CRIM. P. 33(a)–(b)(1). The defendant must show "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Jones*, 399 F.3d 640, 648 (6th Cir. 2005) (*quoting United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986)). Hunter argues that newly discovered evidence regarding his escrow account and home purchase warrant a new trial. Neither justifies a new trial. The first rehashes arguments already rejected by this Court and the Court of Appeals, while the second raises an adventurous new argument that fails for several reasons.

***1. Escrow Accounts.*** Hunter maintains that Kentucky Bar Association documents he describes as "newly discovered" (more on that below) show that his escrow account was not a *client* escrow account. So, according to Hunter, that account can't support a conviction for tax evasion. Motion for New Trial at 2–4; Reply at 10–11.

This Court and the Sixth Circuit have both already rejected the major premise of Hunter's argument: that any difference between a "client" and "firm" escrow account undermines his conviction. As the Court previously explained in considerable detail, Hunter's semantic taxonomy of escrow accounts is irrelevant to his convictions:

> Labeling the account in a way that could shield a taxpayer's funds from IRS seizure is the conduct the government charged that that its evidence supported. Hunter identified no reason why a particular type of escrow account, as a matter of law, couldn't be used to evade the payment of taxes.

Opinion at 3–4. What matters is that the jury found he labeled his bank account to shield funds from IRS seizure. *See id.* (describing how Hunter used an "escrow account" to "masquerade" his own money as client funds to the IRS). The Sixth

---

[†] Hunter's delayed filing offers an alternative basis for denying this motion. After his post-mandate reply didn't arrive on time, the Court directed Hunter to file it and "explai[n] his delay." DN 168. He asserted that "continuing health problems and difficulties in finding counsel to assist in preparation of his Writ of Certiorari in the pending matter" justified his tardiness. Reply (DN 169) at 1. But Hunter hasn't explained the nature of his health problems, why he couldn't have sought an extension in advance, why the 90-day cert deadline superseded the 14-day reply deadline, and why his own legal training didn't help him navigate the situation.

Circuit agreed: notwithstanding Hunter's fine-grained distinctions about the various types of bank accounts, "[t]he relevant fact is that Hunter designated it as an escrow account." CA6 op. at 5. The gist of Hunter's reply ("Respectfully, the Sixth Circuit is wrong." Reply at 9.) is unavailing for reasons too obvious to deserve exposition. In addition, Hunter continues to ignore the alternative basis for the jury's verdict: "recycling cashier's checks and bonds." Opinion at 6.

Hunter nevertheless continues to advance his doomed minor premise, pointing to documents that he says he didn't have before trial. *See* Motion for New Trial at 2–4; Reply at 10–11.

But this evidence doesn't support a new trial because the materials included in the KBA's subpoena response could have been discovered with due diligence. *See Jones*, 399 F.3d at 648. Indeed, a few weeks before trial, the United States provided Hunter with the very documents he now describes as "unavailable." On May 26, 2022, the Assistant United States Attorney "disclosed" a set of records to Steve Pence, Hunter's counsel. U.S. Disclosure Letter (DN 158-3) at 1. One of those records was the "Kentucky Bar Association trial subpoena response re Keith Hunter's IOLTA certifications." *Id.* at 2. And on the file-sharing platform the AUSA used to disclose the documents, Pence "accepted [the U.S.'s] invitation" to view the disclosures. File Sharing Email (DN 158-2) at 1. The record before the Court therefore shows that Hunter, through his trial counsel, had the KBA's subpoena response well before trial, which began on June 13, 2022. Hunter's only rejoinder is that "Hunter's counsel at the time of trial does not recall receiving" the records. Reply at 10. Again, that doesn't matter under the law: a foggy post-trial memory doesn't equate to post-trial discovery or rebut evidence of pre-trial disclosure. Nothing shows this information is "newly discovered." *Jones*, 399 F.3d at 648. And even if it were, Hunter hasn't explained why he couldn't have exercised his own "due diligence" to directly obtain the KBA records sooner.

**2. Home Purchase.** Hunter's new argument is the provocative assertion that the Government illegitimately induced favorable testimony from his friend by promising favorable treatment of him and an affiliated charity. "Gallavin and TTV were promised a huge windfall for [Gallavin's] testimony before the grand jury and at trial." Motion for New Trial at 5; *see also* Reply at 12. TTV (Through the Valley Foundation) was the nominee purchaser to whom Hunter "donated" $300,000 to go toward the purchase of his home at 1420 S. 4th Street. *See* Trial Tr. Vol. V (DN 90) at 40:6–25. Gallavin owned and operated TTV. *See* Trial Tr. Vol. III (DN 88) at 70:16–25. The alleged "windfall" was TTV's anticipated profit from selling the property, including the $300,000 in equity from Hunter's "donation." Motion for New Trial at 5. Why Hunter still had an interest in home equity purchased with money he "donated" is not clear. Nor is the effect of Hunter's eviction from the home following his conviction—more than a decade after the donation and purchase. In

any event, according to Hunter's motion, the Government promised to allow Gallavin and TTV to keep the 4th Street Property in exchange for Gallavin's testimony, which Hunter seems to assume would have incriminated him. Motion for New Trial at 5; Reply at 12.

This argument doesn't work. First, Gallavin didn't testify at trial, so his testimony couldn't' have affected the verdict. (Apparently he didn't testify before the grand jury, either. *See* (unrebutted) Response at 8.) Second, no new "evidence" in the record supports this argument. Hunter's motion refers to a conversation he had with Gallavin "not long after the trial of this matter" in which Gallavin allegedly informed him of his *quid pro quo*. Motion for New Trial at 5; Reply at 12. No affidavit or other evidentiary material supports this assertion—only Hunter's representation in his *pro se* brief. Third, the sham transaction involving the 4th Street house fell outside the statute of limitations and didn't underlie any of the counts of conviction, as the jury instructions made clear. The evidence was admitted—along with much else—to prove Hunter's willfulness. *See* Response at 10; Jury Instructions (DN 75) at 5–6. Fourth, it's hardly clear that the Government's alleged treatment of Gallavin, TTV, and the 4th Street house would amount to a quid pro quo even on Hunter's own telling. He seemingly accepts that TTV held title to the property since at least 2011, Reply at 11, that the United States has not sought to unwind the transaction and seize the house to repay Hunter's tax debt, that TTV could evict him from the house, and that the IRS has not tried to collect the $300,000 from Hunter, Response at 9. Why TTV, much less Gallavin, could be induced by favorable tax treatment to provide false testimony against Hunter is not apparent from the record before this Court.

## Conclusion

The Court denies the Defendant's motion for a new trial.